UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                        Plaintiff,

                  -against-

DOMINGO TELLEZ, Individually, and as officer,
director, shareholder, and/or principal of
TULCINGO CAFE CORP., d/b/a TULCINGO
CAFE BAR, a/k/a TULCINGO CAFE, a/k/a EL
TULCINGO CAFE

and

TULCINGO CAFE CORP., d/b/a TULCINGO
CAFE BAR, a/k/a TULCINGO CAFE, a/k/a EL
TULCINGO CAFE

                     Defendants.
-----------------------------------------------------------------X

                Memorandum & Order
                11-CV-2823 (SMG)

GOLD, S., U.S.M.J.:

## INTRODUCTION

      Plaintiff J & J Sports Productions, Inc. alleges that defendants Tulcingo Cafe Corporation, d/b/a Tulcingo Cafe Bar, a/k/a Tulcingo Cafe, a/k/a El Tulcingo Cafe ("Tulcingo") and Domingo Tellez unlawfully intercepted and exhibited the Pacquaio/Margarito boxing match ("the event") on November 13, 2010 in violation of the Federal Communications Act of 1934 ("FCA"), codified as amended, 47 U.S.C. §§ 553 and 605.[1]  Compl. ¶¶ 16-33, Docket Entry 1. Tulcingo is an inactive corporation, dissolved as of February 5, 2009, almost two years before the event was shown.  *See* New York State, Department of State, Division of Corporations,

---

[1] Sections 553 and 605 are both applied to unauthorized broadcasts of scrambled television programs that originate as radio signals. *J & J Sports Prods. v. Welch*, 2010 WL 4683744, at *2 (E.D.N.Y. Nov. 10, 2010).  Where a litigant seeks damages under both of those sections for a single incident, however, he or she may only recover under one. *See Kingvision Pay-Per View, Ltd. v. Vibes Sports Bar & Café*, 2011 WL 1331858, at *3 (E.D.N.Y. Mar. 15, 2011) (citing *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993)).  In this case, plaintiff has elected to recover under Section 605 and thus this Memorandum and Order will focus on that section. *See* Plaintiff's Memorandum of Law ("Pl. Mem.") at 8, Docket Entry 8-4.

http://appext9.dos.state.ny.us/corp_public/corpsearch.entity_search_entry. Tellez is alleged to be an "officer, director, shareholder, and/or principal" of Tulcingo. Compl. ¶ 8. Upon plaintiff's application and defendants' failure to appear or otherwise defend in this action, the Clerk of Court entered the default of defendants. Docket Entry 9. The plaintiff further moved for a default judgment on August 24, 2011. Docket Entry 8. On consent of the plaintiff under 28 U.S.C. § 636(c) and pursuant to Chief District Judge Carol Bagley Amon's November 17, 2011 Order, the case has been reassigned to me for all purposes. Docket Entry 15. For the reasons stated below, I find that plaintiff is entitled to default judgment.

## DISCUSSION

*a. Liability*

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). In the Second Circuit, section 605(a), which by its express terms prohibits

unauthorized interception of interstate wire communications, has been held applicable to thefts of cable communications, provided that the cable programming originated as a radio or satellite communication. *Cmty. Television Sys. Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002); *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996). *Cf. TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001) (holding that § 605 applies only to theft of satellite broadcasts intercepted prior to distribution over a cable system).

i. Liability of the corporate defendant

As noted above, defendant Tulcingo was dissolved before the broadcast at issue in this case. A dissolved corporation may be held liable for actions taken before its dissolution, but may only be held liable for post-dissolution acts in limited circumstances. *See* N.Y. BUS. CORP. § 1006(b) (providing that the "dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred *before* such dissolution" (emphasis added)). Specifically, dissolved corporations may be the subject of suits for post-dissolution actions where they remain a *de facto* corporation. *See Bruce Supply Corp. v. New Wave Mech., Inc.*, 773 N.Y.S.2d 408, 410 (2d Dep't 2004) (noting that a "corporation may be held liable on a cause of action that accrues after dissolution if the corporation continued its operations, operated its premises, and held itself out as a de facto corporation, notwithstanding its dissolution") (internal citations omitted); *Ludlum Corp. Pension Plan Trust v. Matty's Superservice*, 548 N.Y.S.2d 292, 293 (2d Dep't 1989) (defining a *de facto* corporation as one "where a corporate term of existence has expired but the corporation carries on its affairs and exercises corporate powers as before"); *see also GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 2011 WL 5155202, at *1 (S.D.N.Y. Oct. 13, 2011) (finding liability for actions taken after dissolution in a default case); *Briarpath Ltd. L.P. v.*

*Thomas*, 265 F. Supp. 2d 219, 223 (S.D.N.Y. 2003) (finding that, where a former corporation continued to act 10 years after dissolving, its "dissolution [did] not insulate it from liability"). *But cf. Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 213 (S.D.N.Y. 1995) (finding that the Court did not have jurisdiction over a dissolved corporation where "the allegations . . . involve[d] actions taken subsequent to its dissolution").

Tulcingo may be held liable for any violations of Section 605 on November 13, 2010, despite the fact that it was dissolved in February of 2009. Plaintiff claims that Tulcingo continued to act as a *de facto* corporation more than a year after its dissolution, stating in its supplemental memorandum that the defendant establishment was "open for business and operating as a restaurant/bar" in November, 2010 and that Tulcingo's liquor license remains valid today. Pl. Supp. Mem. at 2-3, Docket Entry 14. This contention is supported by the affidavit of J & J Sports' auditor that 85 people were present in the bar, watching the fight on a television "right above the bar near the rear of the establishment." Ex. C., Docket Entry 8-1. Given the plaintiff's allegations that Tulcingo continued to function as a bar and represented itself as a corporation to the New York State Liquor Authority, it appears that it was a *de facto* corporation at the time of the fight and that it may be held liable for any unauthorized broadcasts under the Cable Act despite its dissolution. *See Bruce Supply Corp.*, 773 N.Y.S.2d at 410.

The plaintiff has also sufficiently pled the factual allegations establishing that Tulcingo violated Section 605(a). J & J Sports has demonstrated that it held rights to distribute the event in question on November 13, 2010. Compl. ¶ 17; Affidavit of J & J Sports' President, Joseph Gagliardi ("Gagliardi Aff."), Docket Entry 8, ¶ 3 and Ex. A. The fight was broadcast "via closed circuit television and via encrypted television signal." Compl. ¶ 17. The defendants did not obtain authorized access to the event through the plaintiff. *Id.* ¶ 21; Gagliardi Aff., Ex. B. The

4

plaintiff further asserts that an auditor it hired to visit businesses not authorized by plaintiff to show the fight observed the event being shown in Tulcingo to approximately 85 people. Gagliardi Aff. ¶ 5-7; *id.*, Ex. C. Given the encryption and other methods of protecting the broadcast, the plaintiff asserts that, although it cannot determine the precise means by which the defendants intercepted the broadcast, the event must have been unlawfully obtained.[2] Compl. ¶ 21. Given the defendants' default and the resulting duty of this Court to take all of the plaintiff's well-pleaded allegations as true, plaintiff has adequately demonstrated that the defendant business, Tulcingo, violated 47 U.S.C. § 605(a).

      ii. Liability of the individual defendant

  Plaintiff has also alleged that Mr. Tellez is individually liable for the violations of the FCA at Tulcingo. Compl. ¶ 8-11. Establishing individual liability under Section 605(a) requires a showing either of "contributory infringement," which arises when the individual "authorize[d] the violations," or "vicarious liability," which arises when the individual "had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *J & J Sports Prods. v. LDG Williams, LLC*, 2011 WL 5402031, at *5-6 (E.D.N.Y. Nov. 7, 2011) (citing *Kingvision Pay-Per-View Ltd. v. Olivares*, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (internal quotation marks omitted)). Courts have found, in default cases, that an allegation that the individual in question had the "supervisory capacity and control over activities occurring within the Establishment" on the relevant date was sufficient to establish individual liability. *See also J & J Sports Prods., Inc. v. Shafik*, 2011 WL 1240559, at *2 (E.D.N.Y. Feb. 11, 2011) (finding individual liability where the

---

[2] There are apparently a number of ways to intercept an encrypted broadcast, including through use of an illegal receiver to obtain satellite broadcasts, registration of a business as a residence, or by co-opting an authorized receiver registered at a different location, in addition to new internet technologies and broadcasts. Compl. ¶ 21; *see also* Gagliardi Aff. ¶ 10. Plaintiff alleges that defendants employed one of these means. Compl. ¶ 21.

5

plaintiff alleged that the individual "supervised and controlled the operating procedures of [the business] . . . and received a financial gain from the operation of [the] establishment"). By contrast, simple allegations of ownership of the establishment without more are generally not sufficient to establish individual liability. *See J & J Sports Prods., Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009); *Joe Hand Promotions, Inc. v. 143-08 94th Corp.*, 2008 WL 3243886, at *3 (E.D.N.Y. Aug. 7, 2008). *But see Premium Sports, Inc. v. Alzate*, 2011 WL 1240558, at *9 (E.D.N.Y. Feb. 25, 2011) (finding that allegations that defendant was the "officer[ ], director[ ], shareholder[ ] and/or principal[ ]" of the defendant business provided enough information to hold the individual defendant liable).

Regarding Mr. Tellez's individual liability, the plaintiff alleges "[u]pon information and belief," that Mr. Tellez "is an officer, director, shareholder and/or principal of" Tulcingo and "the individual with supervisory capacity and control over the activities occurring within the establishment on November 13, 2010." Compl. ¶ 8-9. The plaintiff points to New York State's record of Mr. Tellez as the "Chairman or Chief Executive Officer of Tulcingo Café Corp." and to the New York State Liquor Authority's record of his status as principal of Tulcingo. Pl. Supp. Mem. at 4. Plaintiff further alleges upon information and belief that Tellez gained financially from the operations of Tulcingo. Compl. ¶ 10. Due to the default of defendants, these allegations are assumed to be true, and make the requisite showing that Mr. Tellez had the "right and ability to supervise the infringing proceedings," as well as an "obvious and direct financial interest" in those proceedings. *LDG Williams*, 2011 WL 5402031, at *5-6. Therefore, Mr. Tellez is properly held jointly and severally liable with the defendant business.

  b. *Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon

6

entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiff seeks statutory and enhanced damages in the amount of $35,000 plus costs and attorney's fees of $2,419 against both the individual defendant and the defendant business. Pl. Mem. at 17. Defendants have not submitted any opposition to plaintiff's motion. Under these circumstances, a hearing on the issue of damages is not warranted.

i. Statutory damages

As noted above, the plaintiff in this case has elected to recover under Section 605. *See* Pl. Mem. at 8. A claimant who has established liability under 47 U.S.C. § 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). Where a party elects to recover statutory damages, it may recover an award from $1,000 to $10,000 for each violation of section 605(a). *Id.* § 605(e)(3)(C)(i). An additional amount of up to $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. *Id.* § 605(e)(3)(C)(ii). Plaintiff in this case seeks an award of statutory damages, including an enhanced damages award based on defendants' willfulness. Compl. ¶ 25; Pl Mem. at 8-15.

The amount of damages to be awarded pursuant to Section 605 rests in the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court

considers just"); *see also Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997). Courts have generally adopted one of two methods for awarding statutory damages. Some courts assess a per person charge based on the number of individuals in the establishment at the time of the broadcast and the typical fee for a residential customer to view the fight. *See*, *e.g.*, *J & J Sports Prods. v. Arhin*, 2009 WL 1044500, at *1, 6-7 (E.D.N.Y. Apr. 17, 2009); *Garden City Boxing Club, Inc. v. Taqueria La Mixteca, Inc.*, 2008 WL 4107130, at *2 (E.D.N.Y. Sept. 4, 2008). While plaintiff did not present any evidence of the current fee for non-commercial customers, evidence presented by plaintiff in other cases has led courts to find the amount to be $54.95. *See Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 2011 WL 923515, at *5 (E.D.N.Y. Mar. 14, 2011) (citing *J & J Sports Prods., Inc. v. Hot Shots, Inc.*, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010); *Arhin*, 2009 WL 1044500, at *1). Other courts award plaintiff its lost revenue based on the licensing fee defendant would have paid to broadcast the event at the establishment legally. *See, e.g., Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 340-41 (S.D.N.Y. 2009) (using the licensing fee as a base amount); *J & J Sports Prods., Inc. v. Benson,* 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007).

In this case, plaintiff has presented evidence that there were 85 people present on the night the fight was shown. Gagliardi Aff., Ex. C. J & J Sports has further presented evidence that the price for a commercial license to show that particular match was $2,200 in a venue of this size. Pl. Mem. at 15; Gagliardi Aff., Ex. B, Docket Entry 8-1 at 33. Calculating statutory damages based on the number of patrons present and the residential pay-per-view fee yields an award of $4,670.75. Given the number of people who apparently viewed the match, I find that $4,670.75 is a just award. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).

ii. Enhanced damages

Plaintiff also seeks enhanced damages, alleging that defendants were willful in their violation of Section 605.  *See* Pl. Mem. at 12-15, 17.  The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference to its requirements." *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) (*quoted in Premium Sports, Inc. v. Alzate*, 2011 WL 1240558, at *8 (E.D.N.Y. Feb. 25, 2011)).  As plaintiff notes, Pl. Mem. at 13, the broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. *See Taco Rapido Rest.*, 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act. . . ."); *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages, including whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks.  *J & J Sports Prods., Inc. v. Alvarez*, 2009 WL 3096074, at *5 (S.D.N.Y. Sept. 25, 2009); *Kingvision v. El Rey Del Bistec y Caridad, Inc.*, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).  Taking into account these factors, courts in this District have generally used a multiple of two or three times the statutory damages in order to determine a just award of enhanced damages.  *Circuito Cerrado, Inc. v. Morgalo Corp.*, 2011 WL 3919411, at *7 (E.D.N.Y. July 29, 2011) (collecting cases).

In this case, the factors supporting enhanced damages are not especially compelling.

9

There is no evidence of previous violations. The most readily identifiable loss sustained by the plaintiff is the $2,200 fee it would have received had defendants legitimately obtained rights to broadcast the fight, although the plaintiff also avers in its affidavit that piracy of cable boxing matches has cost J & J Sports "millions of dollars in the last few years" and has resulted in the "erosion of [its] customer base." Gagliardi Aff. ¶¶ 12, 16. It is also unclear what revenues defendants gained from showing the fight, or whether drink premiums were charged. Further, no cover charge was imposed for viewing the event. *Id.*, Ex. C.

Although plaintiff does not present a strong case for enhanced damages, it is entitled to some enhanced damages because the complaint establishes the defendants' willfulness in intercepting the broadcast. Taking into account the relevant factors, as well as the fact that the statutory damages discussed previously are well above the amount defendants would have paid to exhibit the event legally, I find that enhanced damages of two times the amount of statutory damages is appropriate. *See Pizzeria y Pupuseria Santa Rosita*, 2011 WL 923515, at *7 (finding that three times the statutory damages would be an inappropriate calculation of enhanced damages given that the statutory damages were already much greater than license fee cost); *Welch*, 2010 WL 4683744, at *5 (awarding two times the statutory damage amount as enhanced damages where none of the enhanced damages factors was evident). Therefore, enhanced damages are awarded in the amount of $9,341.50.

### iii. Attorney's fees and costs

Finally, plaintiff seeks an award of attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). *See* Compl. ¶ 33(d). Plaintiff seeks a total of $2,419, including $350 in filing fees, $500 for service of process, and $1,569 in attorney's fees. Affidavit of Plaintiff's Attorney Julie Cohen Lonstein ("Lonstein Aff.") ¶ 8, Docket Entry 8-2. Plaintiff's attorney has

documented the hours she and her staff have expended on specific aspects of this case in compliance with *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Lonstein Aff. ¶ 8; *see also Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 66 (E.D.N.Y. 2006) (noting that "a party seeking attorneys' fees [under Section 605(e)] must nonetheless support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done" (internal quotation marks and citation omitted)). I find that plaintiff's attorney's fees appear reasonable. *See Autar*, 426 F. Supp. 2d at 66 (finding that rates of $200 per hour for an attorney and $75 per hour for a legal assistant were reasonable); *see also J & J Sports Prods., Inc. v. Mendoza*, 2008 WL 170199, at *10 (E.D.N.Y. Jan. 16, 2008) (finding the same rates reasonable); *J & J Sports Prods., Inc. v. Rodrigues*, 2007 WL 1726462, at *9 (E.D.N.Y. Apr. 19, 2007) (same).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is granted and damages are awarded against defendants, jointly and severally, in the amount of $16,431.25, comprised of $4,670.75 in statutory damages, $9,341.50 in enhanced damages, and $2,419 in attorney's fees and costs. The Clerk of Court is directed to enter the judgment accordingly and to close the case. Plaintiff is directed to immediately serve a copy of this Order upon the defaulting defendants at their last known addresses and to provide proof of service.

SO ORDERED.

Dated: Brooklyn, New York
December 20, 2011

/s/
STEVEN M. GOLD
United States Magistrate Judge

U:\rmk 2011-12\J&J Sports v Tellez\Tellez M&O- Final.docx